# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles 12/19/2023 1:24 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk

BAHRAM NIKNIA (SBN 256181)
NIKNIA LAW FIRM, INC
1875 Century Park East, Suite 1240
Los Angeles, CA 90067
Telephone:     (310) 601-8025
Facsimile:     (310) 909-7179
bniknia@niknialaw.com

Attorneys for Plaintiff
Lotfi Mehdian

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| LOTFI MEHDIAN and THE MEHDIAN 126 FAMILY TRUST<br><br>Plaintiffs,<br><br>v.<br><br>DENNIS J. ZEMBER JR., an Individual; PRIMIS FINANCIAL CORP., a Virginia corporation d/b/a PRIMIS BANK; and DOES 1 - 20, INCLUSIVE.<br><br>Defendants. | Case No. 23STCV30899<br><br>**COMPLAINT FOR:**<br><br>(1) **INTENTIONAL MISREPRESENTATION;**<br>(2) **NEGLIGENT MISREPRESENTATION;**<br>(3) **VIOLATION OF ELECTRONIC FUND TRANSFER ACT;**<br>(4) **BREACH OF CONTRACT;**<br>(5) **NEGLIGENCE**<br><br>**JURY TRIAL DEMANDED** |

Lotfi Mehdian and The Mehdian 126 Family Trust ("Plaintiffs" and/or "Mehdian"), hereby bring this complaint against defendants Dennis J. Zember, Jr., an individual, Primis Financial Corp., a Virginia corporation and DOES 1-20 (collectively, "Defendants") and states and alleges as follows:

## PARTIES

1. Lotfi Mehdian is a resident of Los Angeles County.

2. The Mehdian 126 Family Trust is a trust formed under the laws of the state of California and managed by Lotfi Mehdian as trustee.

3. Mehdian is informed and believes, and based thereon alleges, that Dennis Zember ("Zember") is a resident of the commonwealth of Virginia.

4. Mehdian is informed and believes, and based thereon alleges, that Primis Financial Corp., ("Primis") is stock corporation existing under the laws of the commonwealth of Virginia, with its principal place of business in Fairfax County.

5. Defendants Doe 1 through Doe 20, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Mehdian. When their true names and capacities are ascertained, Mehdian will amend this complaint by inserting their true names and capacities herein. Mehdian is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Mehdian's damages as herein alleged were proximately caused by those defendants. Each reference in this complaint to Arias refers also to all defendants sued under fictitious names.

## VENUE & JURISDICTION & EXHAUSTION OF REMEDIES

6. Venue is appropriate in Los Angeles County because Mehdian suffered injury in this county and the liability arose in this county.

7. The amount in controversy in this matter exceeds the sum of $25,000.00, exclusive of interest and costs.

8. This court may exercise specific jurisdiction over Zember and Primis because each has purposely availed itself of jurisdiction in Los Angeles County on the grounds that they

each purposefully directed minimum contacts with Mehdian in California, including, but not limited to, through knowing and repeated transmission of computer files over the internet, contacting Mehdian repeatedly in California to discuss their services as well as the issues complained of herein, communicating the misrepresentations complained of herein to Mehdian in California, and entering into contracts with Mehdian in California.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

9. Primis is an online bank that offers a higher interest rate on savings deposits than many traditional banks.

10. Primis' website makes the following representations, among others, to induce potential depositors to open depositor accounts with Primis:

   1. "Access your money anytime."
   2. "People-centered customer experience."
   3. Next-level commitment to you."
   4. ***Your safety is our priority.*** Fighting fraud is tremendously important to us and we want you to stay educated and vigilant.
   5. Protect Your Business: We offer many business services with extra layers of protection, ***giving you peace of mind that your business is protected against fraudsters***.
   6. Say bye to long waits, fine print, and ***security concerns***. Say hello to services that actually serve, no matter the time of day.
   7. **FRAUDSTERS WON'T STOP. NEITHER WILL WE.** We'll keep you in the know about the latest scams, and ways to stay protected.

11. Mr. Mehdian and The Mehdian 126 Family trust are depositors of substantial funds with defendant Primis.

12. On or about August 18, 2023, Mr. Mehdian attempted to perform a routine check of his online account and discovered that he had been locked out.

13. When he finally logged-in, he discovered that there were two unauthorized withdrawals of funds pending from his account. The first in the amount of $4,500, the second

1   in the amount of $245,000.

2       14. Mr. Mehdian immediately informed Primis that the pending withdrawals were

3   unauthorized and requested the transfer to be voided and cancelled.

4       15. Despite the timeliness of these requests, Primis failed and refused to prevent the

5   unauthorized transfers from occurring.

6       16. Primis communicated to Mr. Mehdian that they would do everything they could to

7   prevent the unauthorized transfers from occurring. Yet, in truth and in fact, Primis did nothing

8   to prevent the transfers from occurring.

9       17. Thereafter, defendant Dennis Zember, Primis' chief executive officer, contacted Mr.

10  Mehdian by telephone and attempted to shift Primis' responsibility for safeguarding Mr.

11  Mehdian's funds, by intentionally misrepresenting the cause of the breach of Mr. Mehdian's

12  account.

13      18. Specifically, Mr. Zember intentionally withheld and failed to inform Mr. Mehdian that

14  Primis' depositors accounts had been hacked on July 24, 2023, less than one month before the

15  unauthorized funds had been withdrawn from Mr. Mehdian's account.

16      19. Rather than inform Mr. Mehdian of this fact during their phone call, Mr. Zember

17  falsely told Mr. Mehdian that his own home computer had been hacked and that the hacker

18  had used Mr. Mehdian's wife's credentials to log into his account.

19      20. This claim was patently false since Mr. Mehdian's wife never had a login credentials,

20  never had a username or password and had never logged into Mr. Mehdian's account.

21      21. Mr. Zember knew these misrepresentations were false at the time he made them,

22  because the claims were entirely fabricated, given that there were no login credentials for Mr.

23  Mehdian's wife.

24      22. Moreover, there was no evidence that Mr. Mehdian's personal computer had been

25  hacked and Mr. Zember had no proof that it had been.

26      23. Based on this misrepresentation, Mr. Zember refused to credit Mr. Mehdian's account

27  with the funds that had been withdrawn fraudulently.

28      24. Under the Electronic Fund Transfer Act, 12 CFR 1005.11, Primis was required to

complete its investigation and credit Mr. Mehdian's account no later than 11 days after he reported the fraudulent transaction.

25. Primis has failed and refused to credit Mr. Mehdian's account as required the Electronic Funds Transfer Act and continues to fail and refuse to do so, despite repeated request by Mr. Mehdian.

26. As a direct and proximate result of Mr. Zember's misrepresentations, Mr. Mehdian has lost substantial interest payments that would be owed on the fund that were withdrawn without authorization, as well as access to the funds that have so withdrawn, in addition to other damages.

27. In addition to the foregoing, Primis made certain representations and promises to Mr. Mehdian in exchange for his agreeing to open depositor accounts with Primis. These promises and representations consisted of assurances, promises, and warranties that if Mr. Mehdian entrusted his property consisting of money with Primis, in exchange for this trust in the form of deposits, Defendants would provide the following services:

  1. that Primis would hold Mr. Mehdian's funds in safekeeping,
  2. that Primis would arrange for insurance so that Mr. Mehdian's funds were insured and thus protected from
  3. that Primis would accept deposits into Mr. Mehdian's account and properly and accurately account to Mr. Mehdian for them,
  4. that Primis would release funds from the account of Mr. Mehdian, and debit the account of Mr. Mehdian, only upon Mr. Mehdian's authorization, and only upon Mr. Mehdian's requests for withdrawal, and only in amounts and to payees designated by Mr. Mehdian;
  5. that Primis would release funds from and debit the account of Mr. Mehdian upon the receipt of checks or fund transfer requests, only upon verifying Mr. Mehdian's authorization therefore, or only upon verification of Mr. Mehdian's authorizing signature,
  6. that Primis would not release funds to any person who forged the signature of

Mr. Mehdian,

    7. that Primis would also exercise due care to avoid releasing funds from and/or debit the account of Mr. Mehdian except upon Mr. Mehdian's authorization.

    8. that Primis would account for Mr. Mehdian's account activities and report its accounting of said activities to Mr. Mehdian on written statements with a frequency not less than monthly,

    9. that Primis would act expeditiously in processing the presentment and notice of dishonor of items,

    10. that Primis would exercise reasonable care to detect, uncover, and resist attempts by unauthorized persons to obtain monies, payments, or debits from the account of Mr. Mehdian and to report same to Mr. Mehdian promptly.

28. Primis represented to Mr. Mehdian that they had the expertise and resources to perform these services, to resist attempts by unknown wrongdoers to cause unauthorized withdrawals to the loss of Mr. Mehdians, and to investigate and determine the manner in which an unauthorized withdrawal or payment scheme was operated, and the identity of the thief or thieves who might attempt to cause unauthorized withdrawals or payments.

29. Primis represented and promised to Mr. Mehdian that in the event of an attempted unauthorized withdrawal, payment, or debit to Mr. Mehdian's account without his authorization, Primis would cooperate with Mr. Mehdian and devote its expertise and resources to investigate the unauthorized withdrawal, payment, or debit to determine the bank error, forgery, or scheme and report same to Mr. Mehdian.

30. Primis represented and promised to Mr. Mehdian that in the event of an attempted unauthorized withdrawal, payment, or debit to Mr. Mehdian's account without his authorization, Primis would restore the account balance of Mr. Mehdian.

31. Mr. Mehdian was, by the promises and representations made by Primis, induced to enter into a contract (the "Agreement") with Primis and open the deposit accounts.

32. Commencing on or about August 18, 2023, unauthorized withdrawals, debits, transfers of funds and payments occurred in the deposit accounts of Mr. Mehdian.

33. These withdrawals, debits, transfers and payments were unauthorized; they were not authorized by Mr. Mehdian, nor were they authorized by any other person with authority to withdraw, pay from, transfer or debit Mr. Mehdian's account.

34. Mr. Mehdian believes that these unauthorized withdrawals, debits, transfers and payments were made upon forgeries.

35. Mr. Mehdian believes that these unauthorized withdrawals, debits, and payments were proximately caused by bank error or neglect.

36. Mr. Mehdian believes that these unauthorized withdrawals, debits, transfers and payments occurred as a result of a scheme by a wrongdoer other than Mr. Mehdian to whom Primis wrongfully and negligently released Mr. Mehdian's monies.

37. These unauthorized withdrawals, debits, transfers and payments consist of two transactions occurring in August of 2023, in which Primis wrongfully caused debits to Mr. Mehdian's account in the amount of approximately $250,000.

38. As soon as Mr. Mehdian became aware of the unauthorized withdrawals, debits, transfers and payments, he notified Primis, disputed all of the unauthorized charges to his account, filed the appropriate claim forms and communicated frequently with employees of Primis, including Dennis Zember, in his efforts to recover the unauthorized withdrawals, debits, transfers and payments.

39. On or about October 19, 2023, Defendants represented to Mr. Mehdian that $4,500 of the unauthorized withdrawals would be re-credited back to his account within one week, but failed to do so.

40. Mr. Mehdian is informed and believes that Defendants intentionally misrepresented that the funds would be re-credited to his account in order to cause delay, discourage Mr. Mehdian from pursuing his rights, and avoid paying Mr. Mehdian the interest owed on his deposit account.

41. On information and belief, Defendants made the same misrepresentations to Jesse Truesdell, a United States Secret Service special agent assigned to investigate the unauthorized withdrawals. In that case, Defendant's misrepresented that the $4,500 had

already been re-credited to Mr. Mehdian's account on October 17, 2023. This was false and Defendants knew it was false when they made those representations to Mr. Truedell, in an effort to cause delay, discourage Mr. Mehdian from pursuing his rights, accessing his funds, and avoid paying Mr. Mehdian the interest owed on his deposit account.

42. As a direct and proximate consequence of these misrepresentations, Mr. Mehdian did delay pursuing his rights and did suffer the loss of interest payments and access to his funds.

43. On information and belief, Mr. Mehdian is not the only depositor at Primis to have lost substantial funds due to unauthorized activity following the hacking of Primis' accounts in July 2023. Mr. Mehdian is informed and believes that approximately $2,000,000 of depositor funds have been illegally withdrawn following the July hacking occurrence.

## FIRST CAUSE OF ACTION

For Intentional Misrepresentation

(Against Dennis Zember)

44. Mr. Mehdian incorporates and re-alleges every single allegation contained in this complaint as though they were set forth in full herein.

45. Mr. Zember made misrepresentations of a material fact to Mr. Mehdian, with knowledge of their falsity, with intent to deceive and induce reliance, and upon which Mr. Mehdian justifiably relied.

46. More specifically, Mr. Zember falsely and maliciously told Mr. Mehdian that falsely told Mr. Mehdian that his own home computer had been hacked and that the hacker had used Mr. Mehdian's wife's credentials to log into his account.

47. Mr. Zember further falsely and maliciously communicated to Mr. Mehdian and Mr. Truesdell that $4,500 of Mr. Mehdian's money had been re-credited to his account, when it had not.

48. In truth and in fact, at the time Mr. Zember made these representations, he had not performed as represented, and made the representations with the intent to deceive Mr. Mehdian and to induce Mr. Mehdian to forego exercising his legal rights, and forego the receipt of interest payments which he was entitled to, and prevent access to his funds.

49. At the time Mr. Zember made these promises, representations and warranties, he knew them to be false.

50. Mr. Mehdian was induced to rely, and reasonably relied, upon Mr. Zember's representations to his detriment. Had Mr. Mehdian known the truth, Mr. Mehdian would have taken immediate action to recover the stolen funds, close his deposit accounts with Primis and seek recovery of the funds and interest owed to him.

51. As a direct and proximate result of Mr. Zember's fraud and deceit, Mr. Mehdian has sustained compensatory damages, according to proof.

52. Further, Mr. Zember's conduct constitutes fraud, oppression and malice and was intended to deprive Mr. Mehdian of his property. Accordingly, Mr. Mehdian is entitled to punitive and exemplary damages according to proof.

## SECOND CAUSE OF ACTION

For Negligent Misrepresentation

(Against Dennis Zember)

53. Mr. Mehdian incorporates and re-alleges every single allegation contained in this complaint as though they were set forth in full herein.

54. At the time Mr. Zember made these representations, he had no reasonable grounds for believing that the representations were true, and they made the representations with the intent to induce Mr. Mehdian to take the actions herein alleged.

55. Mr. Mehdian justifiably relied to its detriment on Mr. Zember's representations.

56. As a direct and proximate cause of Mr. Zember's negligent misrepresentations, Mr. Mehdian sustained damages according to proof.

## THIRD CAUSE OF ACTION

For Violation of the Electronic Funds Transfer Act

(Against All Defendants)

57. Mr. Mehdian incorporates and re-alleges every single allegation contained in this complaint as though they were set forth in full herein.

58. Defendants failed to obtain authorization from the Mr. Mehdian for these electronic

1  fund transfers, as required by, and in violation of, Reg. E and EFTA. See 12 C.F.R.
2  §1005.10(b).
3      59. Defendant's failure to obtain Mr. Mehdian's authorizations required by the EFTA, prior
4  to permitting multiple electronic fund transfers from Mr. Mehdian's bank account, constitutes
5  a violation of the EFTA, 15 U.S.C. § 1693.
6      60. As a result of Defendant's violations of EFTA and Regulation E, Mr. Mehdian is
7  entitled to actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages in an
8  amount up to $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A); treble damages under 15
9  U.S.C. § 16931'; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 169m(a)(3)
10 from Defendant.
11     61. Electronic funds transfers made by covered entities are subject to procedural
12 requirements designed to protect consumers like Mr. Mehdian from transactions made in error
13 or without the consumer's consent.
14     62. Defendant failed to provisionally recredit Mr. Mehdians bank account for a disputed
15 electronic funds transfer and failed to undertake a timely, reasonable, and good faith
16 investigation of the disputed amount, as required by the EFTA.
17     63. Defendant failed to promptly provide copies of the documentation it relied upon in
18 determining that no error had occurred in making these fraudulent transfers from Mr.
19 Mehdian's accounts after he demanded copies of such documents, as required by and in
20 violation of EFTA, which states in relevant part:
21     1.   If the financial institution determines after its investigation pursuant to subsection
22         (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation
23         of its findings within 3 business days after the conclusion of its investigation, and u**pon**
24         **request of the consumer promptly deliver or mail to the consumer reproductions of**
25         **all documents which the financial institution relied on to conclude that such  error**
26         **did not occur**.  15 U.S.C. §§ 1693f(d) (bold underline added).
27     64. Mr. Mehdian has suffered damages as a result of Defendant's violations of the EFTA.
28     65. Pursuant to 15 U.S.C. § 1693f(e) and 1693m, EFTA and Reg. E, Mr. Mehdian seeks

statutory damages, actual damages, treble damages, and reasonable costs and attorneys' fees from Defendant

## FOURTH CAUSE OF ACTION

For Breach of Contract

(Against All Defendants)

66. Mr. Mehdian incorporates and re-alleges every single allegation contained in this complaint as though they were set forth in full herein.

67. Mr. Mehdian has performed all conditions, covenants, and agreements required on its part under the Agreement.

68. As more fully described above, Defendants breach the Agreement by failing to exercise reasonable care to detect, uncover, and resist attempts by unauthorized persons to obtain monies, payments, or debits from Mr. Mehdian's deposit account; failing to cooperate with Mr. Mehdian and devote its expertise and resources to investigate the unauthorized withdrawal, payment, or debit to determine the bank error, forgery, or scheme and report same to Mr. Mehdian; and failing to restore the account balance of Mr. Mehdian in the event of the unauthorized withdrawal, payment, or debit to Mr. Mehdian's account without her authorization.

69. As a direct result of Defendant's breach of the Agreement, Mr. Mehdian has suffered damages in the amount of at least $245,000 in amounts owed to her, plus interest on those funds, plus attorneys fees.

## FIFTH CAUSE OF ACTION

Negligence

(Against All Defendants)

70. Mr. Mehdian incorporates and re-alleges every single allegation contained in this complaint as though they were set forth in full herein.

71. As more fully described above, Defendants owed a duty to Plaintiffs to exercise reasonable care to detect, uncover, and resist attempts by unauthorized persons to obtain

monies, payments, or debits from the account of Mr. Mehdian and to report same to Mr. Mehdian promptly; to keep Mr. Mehdian's funds safe from bank error and third-party theft; to exercise ordinary, or due, or reasonable care to confirm the identify of payees as authorized before permitting payments, withdrawals, and/or debits in favor of unauthorized payees; to exercise ordinary, or due, or reasonable care to avoid releasing funds on forged signatures; and to exercise ordinary, or due, or reasonable care in processing demands for payment or withdrawals from Mr. Mehdians' account.

72. Defendants failed to detect, uncover, and resist attempts by unauthorized persons to obtain monies, payments, or debits from the account of Mr. Mehdian and to report same to Mr. Mehdian promptly

73. Defendants failed to exercise ordinary, or due, or reasonable care, to keep Mr. Mehdians' funds safe from bank error and third-party theft.

74. Defendants failed to exercise ordinary, or due, or reasonable care to confirm the identify of payees as authorized before permitting payments, withdrawals, and/or debits in favor of unauthorized payees.

75. Defendants failed to exercise ordinary, or due, or reasonable care to avoid releasing funds on forged signatures.

76. Defendants failed to exercise ordinary, or due, or reasonable care in processing demands for payment or withdrawals from Mr. Mehdian's account.

77. As a proximate result of Defendant's failure to exercise ordinary, or due, or reasonable care, Mr. Mehdian has suffered damages in the amount of at least $245,000 in amounts owed to her, plus interest on those funds, plus attorneys fees.

**WHEREFORE**, Plaintiffs prays judgment against Defendants as follows:

FOR ALL CAUSES OF ACTION:

1. For general damages;
2. For special damages;

3. For interest on the above amounts;

4. For all reasonable attorney's fees;

5. For costs of suit incurred herein; and

6. For such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED: December 18, 2023  NIKNIA LAW FIRM, INC
　　　　　　　　　　　　　　　BAHRAM NIKNIA

　　　　　　　　　　　　　　　By:  /s/ Bahram Niknia
　　　　　　　　　　　　　　　　　BAHRAM NIKNIA

　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*
　　　　　　　　　　　　　　　*Lotfi Mehdian and The Mehdian 126 Family Trust*